1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**

9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   ELBERT THOMAS MARTIN,                    No. CIV S-08-1323-MCE-CMK-P

12                    Plaintiff,

13           vs.                              FINDINGS AND RECOMMENDATIONS

14   M. ROCHE, et al.,

15                    Defendants.

16   _____/

17           Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant

18   to 42 U.S.C. § 1983.  Pending before the court is plaintiff's complaint (Doc. 1).

19           The court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

21   § 1915A(a).  The court must dismiss a complaint or portion thereof if it: (1) is frivolous or

22   malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief

23   from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b)(1), (2).  Moreover,

24   the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain

25   statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

26   This means that claims must be stated simply, concisely, and directly.  See McHenry v. Renne,

1

84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Further, it is impossible for the court to conduct required the screening when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds as against those defendants residing and/or working within the boundaries of the Sacramento division of this court.[1]  Specifically, plaintiff names Roche and R. Cox, who are prison officials at High Desert State Prison ("HDSP").  Plaintiff also names: Donald A. Ramberg, M.D., whom plaintiff alleges to be a doctor with the "Medical Board of

---

[1] This action was originally filed in the Fresno division and transferred to this court by order issued on June 12, 2008.  That order provided as follows:

> Though currently housed in Tehachepi, Plaintiff names defendants in Los Angeles, High Desert State Prison in Lassen County, the California Training Facility at Soledad in Monterey County, and the California Men's Colony at San Luis Obispo, in San Luis Obispo County.  Plaintiff also names defendants in Morris Plains, New Jersey.
> The federal venue statute required that a civil action, other than one based on diversity jurisdiction, be brought only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought."  28 U.S.C. § 1391(b).

As to plaintiff's claims regarding defendants residing in Los Angeles County and San Luis Obispo County, Judge Wunderlich transferred the action to the United States District Court for the Central District of California.  As to plaintiff's claims regarding defendants residing in Monterey County, the case was transferred to the United States District Court for the Northern District of California.  As to plaintiff's claims against the defendants residing in New Jersey, the case was transferred to the United States District Court for the District of New Jersey.  Finally, as to plaintiff's claims against defendants residing in Lassen County (i.e., those claims concerning events at High Desert State Prison), the case was transferred to the Sacramento division of this court and assigned the case number referenced in the caption above.

California" located in Sacramento, and N. Grannis, the Chief of Inmate Appeal for the California Department of Corrections and Rehabilitation, whose place of business is also located in Sacramento.  The court will focus on plaintiff's allegations as against these four defendants only.

Plaintiff states that he was transferred to HDSP on June 13, 2002, and was experiencing adverse side effects of pain medication provided to him at his prior institution. Specifically, he asserts that he had been given Neurontin which caused the following problems: "stay thirsty, increase saliva and blisters in plaintiff's mouth, as plaintiff's motor skills were impaired with dizziness, decrease in body weight with continuous chills, and joint stiffness."[2] After submitting a request to see medical staff at HDSP, plaintiff states that defendant Roche ordered an MRI of plaintiff's spine.

Plaintiff states that, after the MRI, he was placed back on Neurontin and that, after 38 months the adverse side effects worsened  "to the point that plaintiff's right testicle began swelling, impairing the plaintiff's ability to stand, stoop, and walk."  According to plaintiff, "doing [sic] the course of the plaintiff's continuous pain, the plaintiff was then seen on April 6, 2005, by the defendant, Dr. R. Cox, who examined the plaintiff, and continued the meds 'Neurontin,' and also placed the plaintiff on the Institution's Disability Placement Program . . . stating 'Mobility Impaired' with no further treatment. . . ."

Plaintiff alleges that defendant Ramberg conducted a physical examination on October 31, 2006, and was scheduled to perform spinal surgery later in 2006.  According to plaintiff, defendant Ramberg did not perform that procedure in the way it was discussed with plaintiff during the October 2006 consultation.  Plaintiff states that, upon his discharge from the hospital, defendant Ramberg prescribed various medications.  According to plaintiff, a "30-day follow-up" ordered by defendant Ramberg never occurred.

/ / /

---

[2]     Plaintiff adds that Neruontin was discontinued for almost four months following his transfer to HDSP.

The complaint does not appear to contain any specific allegations as to defendant
Grannis.  However, plaintiff attaches to the complaint a September 4, 2007, Director's Level
Appeal Decision addressing plaintiff's inmate grievance.  Defendant Grannis outlined plaintiff's
grievance as follows:

> It is the appellant's position that on December 13, 2006, he was
> transported from California Men's Colony (CMC) to an outside hospital
> for a medical procedure.  The appellant contends that upon his return to
> the institution, he learned that CMC Administrative Segregation Unit
> (ASU) staff had misplaced the legal paperwork that he had left in his cell.
> The appellant contends that prior to being transported he was told to leave
> the legal paperwork in his assigned cell and assured that this paperwork
> would be forwarded to his stored property in Receiving & Release (R&R)
> if after three days he was unable to return to CMC.  The appellant also
> contends that prior to his return to CMC he was removed from the ASU
> and that when he did return he was re-housed in "A" Quad.  The appellant
> contends that when he received his property from R&R he noticed that the
> legal paperwork that he had left in his cell was missing.  The appellant
> stated that he submitted an Inmate Request for Interview form in an
> attempt to locate the missing paperwork, and when he received no
> response, he submitted an appeal.  The appellant requests that his missing
> paperwork be returned to him so that they can be submitted to the court in
> a timely manner.

Defendant Grannis indicated in the decision that plaintiff's inmate appeal was being granted in
part.  Specifically, the decision states:

> . . . Inmate access to the courts shall not be obstructed.  A review
> of the circumstances surrounding the appellant's missing property
> indicates that staff failed to appropriately process the appellant's legal
> paperwork from ASU back into his stored property in R&R.  The
> examiner found that the institution and R&R staff made a significant effort
> to find the appellant's missing legal paperwork; however, during their
> attempts to locate the missing legal paperwork and their interview with the
> appellant, they did not require the appellant to provide specific
> information on the court documents he was missing or the legal material
> from which he derived his legal noted from.  If after interviewing the
> appellant he can establish that he does know the specific court/case and
> provide details (such as divorce papers) of the legal paperwork in his
> possession at the time his property was left in the cell, the institution shall
> be required to pay for any required copies of case material.

/ / /

/ / /

4

## II. DISCUSSION

It appears that the basis for plaintiff's claims against defendants Roche, Cox, and Ramberg is inadequate medical care, in violation of the Eighth Amendment.   Given the inclusion of defendant Grannis in this lawsuit and the attachment of her September 4, 2007, decision regarding plaintiff's inmate grievance, it is also possible that plaintiff is attempting to raise either a due process or access to the courts claim based on the loss of his legal property.

### A.    Defendants Roche, Cox, and Ramberg

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant

injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d

1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition

is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily

activities; and (3) whether the condition is chronic and accompanied by substantial pain. See

Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases

than in other Eighth Amendment contexts because the responsibility to provide inmates with

medical care does not generally conflict with competing penological concerns. See McGuckin,

974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to

decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.

1989). The complete denial of medical attention may constitute deliberate indifference. See

Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical

treatment, or interference with medical treatment, may also constitute deliberate indifference.

See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also

demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give

rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a

difference of opinion between the prisoner and medical providers concerning the appropriate

course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh,

90 F.3d 330, 332 (9th Cir. 1996).

Here, plaintiff cannot state a cognizable claim against defendants Roche, Cox, or

Ramberg based on denial of medical care. In particular, plaintiff alleges that each of these three

defendants provided medical treatment:  an MRI was ordered by defendant Roche upon

plaintiff's transfer to HDSP in response to plaintiff's complaints; defendant Cox examined

plaintiff in April 2005 after plaintiff's problems worsened; and defendant Ramberg performed

1   surgery in late 2006.  At best, plaintiff's claim against these three defendants is based on

2   professional negligence, which is not cognizable under § 1983.

3        **B.**    **Defendant Grannis**

4        As indicated above, plaintiff's complaint does not appear to contain any specific

5   allegations relating to defendant Grannis, who authored the September 2007 Director's Level

6   Appeal Decision.  It is possible plaintiff could be asserting a claim based on denial of access to

7   the courts resulting from the loss of his legal material, deprivation of due process resulting from

8   the loss of his legal materials, or both.  The court will address both possibilities.

9        1.    Denial of Access to the Courts

10        Prisoners have a constitutional right of access to the courts.  See Lewis v. Casey,

11   518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d

12   1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures).

13   This right requires prison officials to "assist inmates in the preparation and filing of meaningful

14   legal papers by providing prisoners with adequate law libraries or adequate assistance from

15   persons trained in the law." Bounds, 430 U.S. at 828.  The right, however, only requires that

16   prisoners have the capability of bringing challenges to sentences or conditions of confinement.

17   See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous criminal appeals,

18   habeas corpus actions, and § 1983 suits.  See id. at 353 n.3 & 354-55.  Therefore, the right of

19   access to the courts is only a right to present these kinds of claims to the court, and not a right to

20   discover claims or to litigate them effectively once filed.  See id. at 354-55.

21        As a jurisdictional requirement flowing from the standing doctrine, the prisoner

22   must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to

23   contemplated or existing litigation, such as the inability to meet a filing deadline or present a

24   non-frivolous claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).

25   Delays in providing legal materials or assistance which result in prejudice are "not of

26   constitutional significance" if the delay is reasonably related to legitimate penological purposes.

1  Lewis, 518 U.S. at 362.

2  Any potential claim against defendant Grannis based on denial of access to the

3  courts is flawed for at least two reasons.  First, plaintiff has not alleged any actual injury.

4  Second, plaintiff has not alleged any causal connection between defendant Grannis and denial of

5  access to the courts.  The latter defect cannot be cured given that plaintiff alleges that prison

6  officials other than defendant Grannis were responsible for the loss of his legal paperwork.

7  Defendant Grannis' only involvement was to write the September 2007 appeal decision.  Because

8  prisoners have no stand-alone rights with respect to the inmate appeal process, see Mann v.

9  Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th

10  Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance

11  process), defendant Grannis cannot be held liable solely based on her participation in that

12  process.

13         2.  Due Process

14  The Due Process Clause protects prisoners from being deprived of life, liberty, or

15  property without due process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to

16  state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or

17  property interest for which the protection is sought.  See Ingraham v. Wright, 430 U.S. 651, 672

18  (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972).  Due process protects against the

19  deprivation of property where there is a legitimate claim of entitlement to the property.  See Bd.

20  of Regents, 408 U.S. at 577.  Protected property interests are created, and their dimensions are

21  defined, by existing rules that stem from an independent source – such as state law – and which

22  secure certain benefits and support claims of entitlement to those benefits.  See id.

23  To the extent plaintiff asserts a due process violation based on loss of his legal

24  property, he cannot state a claim against defendant Grannis because, as discussed above, her only

25  alleged involvement with plaintiff's legal property was to author the September appeals decision

26  and she cannot be held liable solely on that basis.

**III.  CONCLUSION**

Because it does not appear possible that the deficiencies identified herein can be cured by amending the complaint, plaintiff is not entitled to leave to amend prior to dismissal of the entire action.  See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc).

Based on the foregoing, the undersigned recommends that this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


 DATED: November 12, 2008


                                        _____
                                        **CRAIG M. KELLISON**
                                        UNITED STATES MAGISTRATE JUDGE